LOTTINGER, Judge.
This is a suit in tort for damages resulting from the death of Mervin O. Bookter. The petitioners are the major children of deceased, namely, Edward O. Bookter, Mrs. Hortense Bookter Courtney, Mrs. Ada Bookter Migliore and Mrs. Almedia Book-ter Lester. The defendants are Felton Mack, who was driving the truck which hit deceased, his employer, Kalmbach-Burckett Company, Inc., and its liability insurer, Standard Accident Insurance Company of Detroit, Michigan. The Lower Court awarded judgment in favor of defendants and dismissed petitioners’ demand. The petitioners have appealed.
The petitioners claim that at about 7 o’clock p. m. on October 30, 1957 their father, Mervin O. Bookter, was walking in a southerly direction along Louisiana State Highway No. 68 at about 3J4 miles south of Jackson in the Parish of East Feliciana, Louisiana. At about the same time the defendant, Felton Mack, was driving a 1952 model Mack tractor with trailer in a southerly direction along the said Highway No. 68. At the time Mack was within the course and scope of his employment with defendant, Kalmbach-Burckett Company, Inc. Petitioners claim that Mack was driving the *838 truck in a grossly negligent manner, that he was proceeding at an excessive rate of speed, failed to keep a proper lookout for people and conditions ahead and, generally, failed to have the truck under proper control. Upon reaching the location where Bookter was walking along the highway, petitioners claim that the defendant, Mack, negligently ran into him, causing his death. They pray for damages for loss of companionship, pain and suffering of their deceased father, etc. The defendants claim that the sole and proximate cause of the accident was due to the negligence of the deceased in running or walking directly into the highway in the path of the approaching truck driven by Mack. They claim, in the alternative, that even if defendants are found guilty of some act of negligence, that the negligence of deceased was a contributing factor to the accident and that such contributory negligence would bar any recovery by the petitioners.
The Lower Court held that the negligence of the deceased was the cause of the accident, and that if there was any negligence at all upon the part of the driver of the truck that the deceased was at least guilty of contributory negligence which would bar recovery. Although petitioners did invoke the doctrine of last clear chance, the Lower Court held that the defendant driver did not have a last clear chance to avoid the accident, as the sudden appearance of the deceased created such a sudden emergency that the driver was unable to take any action to avoid hitting deceased. The Lower Court held in favor of the defendants, and the petitioners have appealed.
The record discloses that although it was dark at the time of the accident, there was nothing except darkness to interfere with visibility. The night was clear. Louisiana State Highway No. 68 is a hard-surfaced two-lane highway, which was straight in the vicinity of the accident. The point of impact was on the upgrade side of a slight hill. The highway in the vicinity has broad shoulders, with a slight sloping ditch. Defendant was driving a 1952 model Mack tractor and was pulling a semi-trailer. The truck had single wheels in the front and dual wheels in the rear. The trailer had four sets of dual wheels in the rear, for a total of eight, and had what is commonly termed a “landing gear” in the front which is a wheel set in the middle of the trailer which does not touch the highway while driving.
The driver of the truck as well as his passenger, John Mingo, testified that they had made a delivery of feed to a dairy known as Norsworthy Farms just a short time prior to the fatal accident After delivery of the feed, they passed through the town of Jackson and were proceeding to their employer’s business place situated in Baton Rouge. On cross examination under the act, the driver testified that he had worked for this same employer for a period of approximately five years as a truck driver. He testified that he had no trouble with the lights on his truck on the evening of the accident. He stated that after passing through the town of Jackson, Louisiana, he was proceeding at speed of approximately 38 miles per hour with his headlights on, and that he could see a good distance down the road. Suddenly the deceased appeared in the center of the west lane of traffic of Highway No. 68 at a distance of ten feet in front of the truck. The truck was traveling in the west lane of traffic, which was its right hand lane. The driver testified that the appearance of this man was so sudden that he had no time whatsoever to avoid hitting him. He did, however, hit his brakes at about the time that he hit the deceased, but then released them because he was afraid the truck would jackknife on him, and he was also afraid that the wheels of the trailer might run over the man. The point of impact on the truck was very slightly to the right of center of the grill of the truck. The driver testified that he came to a slow stop and was so alarmed that he just leaned against the wheel for a few minutes until a young man came to the truck and told him “you can get. out now — I think he is dead.” All of this testimony of Felton Mack is cor *839 roborated by John Mingo, who was seated in the truck to the right of the driver.
Mr. Frank Davidson, who worked at the Norsworthy Farms dairy testified on behalf of petitioners. He testified that he was present while the two boys were unloading the feed at the dairy on the night of the accident. He stated that they had trouble with the lights on the truck, and that all the lights on the truck went out. He offered a tractor fuse in an attempt to fix the lights, however, this fuse was too small. He testified that the driver of the truck fixed the lights by wrapping tinfoil around fuse. He testified that as the truck was leaving Nors-worthy Farms the lights blinked and that the driver stopped, evidently to fix them. He does not know what the driver did in an attempt to fix the lights, as he did not -walk down to where the truck was parked.
Hardy Travis, the Marshal of Jackson, Louisiana, and Deputy Sheriff of East Fe-liciana Parish, testified that he received notice of the accident at approximately 7 o’clock. He immediately went to the scene of the accident. He testified that when he arrived the motor of the truck was still running and the lights were on. The truck was still in the right hand lane of traffic. He testified that there were cigarettes scattered for a distance of seventeen steps north from the body of deceased. His testimony on this score was that it was seventeen steps from the first cigarette to the body and there were seventy-two steps from the first cigarette to the rear end of the trailer. We assume that the force of the impact knocked the cigarettes from the pocket of deceased and scattered them along the highway. Mr. Travis testified that his step is equal to three feet. He testified further that the impact was just to the right of the center of the grill, which point was evidently hit by the head of the deceased. He further testified that the landing gear of the trailer had blood on it. Mr. Travis stated that he searched the highway for skid marks and found none. The truck, according to Travis, was not removed from the highway until at least twenty minutes and possibly thirty or forty minutes after the occurrence of the accident. At this time Richard Stevens drove the truck into a field along the highway at the direction of Marshal Travis. The Marshal testified that he directed Stevens through a gate and that the lights on the truck were very dim at the time. The lights had been burning and the motor had been running continuously since the impact. Richard Stevens testified on behalf of the petitioners. He stated that he was riding in a car approaching in a northerly direction along the highway and noticed the truck approaching although he did not pay particular attention to it. After passing the truck he saw a man’s body lying in the highway. Whereupon the driver stopped the automobile in which he was riding. Stevens told the driver to notify the Deputy Sheriff. Stevens testified that the man was still alive when he walked up to him, that the man moved his leg, but made no motion thereafter. At first, Stevens thought that the driver of the truck had fallen out but upon his approaching the truck he found that the two Negro boys were still sitting in it. He testified as to the location of the cigarettes and the body, substantially the same as that of Marshal Travis. Mr. Stevens testified that he drove the truck off the highway at the request of Marshal Travis. It could have been some forty-five minutes after the accident when he drove the truck into the field. He did testify that the lights on the truck at that time were very dim and that he could hardly see to drive through the gate. Unfortunately this witness did not testify as to the lights on the truck when he first appeared at the scene of the accident, although he did testify that when he first passed the truck he noticed nothing peculiar with it, from which testimony it might be assumed that the lights at that time were functioning properly. The defendant claims that the reason that the lights were dim at the time the truck was driven off the highway was that they had been burning and the motor had been idling for a period of some forty-five minutes.
*840 Joseph Guillory and Ernest Barnes both testified on behalf of the defendants. They each testified that they were in a car preceding that in which Richard Stevens was riding, and that they were traveling northerly on Highway No. 68 in the vicinity of the accident. They both testified that a truck approached them, and dimmed its lights, and that as they passed the truck they noticed an object immediately in front of the truck. They could not say whether the object was a man, a cow or what it was. The testimony of these witnesses is to the effect that they did not stop at the scene of the accident but continued on to their destination and later learned that a man had been killed. Guillory was a very poor witness, he not being able to very readily understand English. It appears from Barnes’ testimony, however, that he noticed nothing wrong with the lights on the truck, although he did say that the lights were a bit dim. He further stated that as the automobiles passed each other, he noticed an object, which later turned out to be the deceased, moving in front of the truck from the west side to the east side of the southbound traffic lane.
Felton Mack was recalled to the stand as a witness for the defendants. He testified that he had no trouble with his lights while at Norsworthy Farms except that the light on the inside of the trailer did not function. He claimed that his headlights were in good working condition at all times. Both he and Mingo testified that they do not remember hitting the gate as they left the dairy farm as was claimed by Mr. Davidson, and they both claimed that they did stop after passing through the gate for the purpose of Felton Mack relieving himself, and that he did turn the lights on the truck off so that he would not be seen. Both of these parties testified that they did not see the deceased until just about the time that he was hit, at which time he was standing in the middle of their lane of traffic.
There are, of course, several serious questions which are left open after we have thoroughly examined the evidence submitted. There is no evidence whatsoever which contradicts the testimony of the driver of the truck to the effect that he was proceeding at a speed of approximately 38 miles per hour. Certainly the evidence does not indicate that he was speeding, and we find that the Court correctly so held.
The question of whether or not the headlights on the truck were properly functioning is, of course, a very serious one. Both Mack and Mingo testified that they could see for a good distance down the highway with the truck lights which were properly functioning. Both Guillory and Barnes testified that the lights were working although they were somewhat dim. Richard Stevens testified that the lights were very dim at a time some forty-five minutes after the accident, and after which they had been burning with the motor of the truck idling for such period of time. He was asked on cross-examination and stated that he saw the headlights of the truck before he passed it. He was not examined as to the condition of the lights at that time and made no mention of the fact whether they were bright or dim. He did testify, however, that he noticed nothing peculiar about the manner in which the truck was operated. He was asked the question “Was there anything about this truck as you approached it that attracted your attention — that is, before you passed it and saw the body on the road?”, to which he replied “Well, not in particular, no.” It certainly appears to us if this witness thought the lights were dim or improperly functioning at the time of the accident that he would have said something about it when he was asked this question.
The testimony of Mr. Davidson on this score lends little weight with respect to the functioning of the headlights in view of the conflicting testimony of the other witnesses, and in view of the testimony of Mack and Mingo who did agree that there was trouble with the light on the inside of the trailer, however, at that time the headlights were turned off because they were unloading the truck. Mack testified that the tail lights on the truck could have blinked on leaving the *841 dairy farm, which might have been caused by a loose connection between the trailer and the tractor.
The only witness who testified as to the dimness of the lights shortly after the accident was Marshal Travis. Upon being questioned as to the facts after he arrived on the scene of the accident he testified that the lights were very dim. He stated that “the motor was running, but the lights were dim.” However, the Marshal did not come out and say that the lights were very dim immediately after he arrived upon the scene of the accident, he later made the clear statement that they were very dim at the time the truck was removed from the highway, and there is a question in our minds as to whether or not he meant that the lights were very dim also at the time he arrived at the accident. Barnes and Guillory both testified that the truck lights were on bright as they approached it, and that the driver of the truck dimmed his lights just before passing the car in which they were riding. Although they testified that the lights were somewhat dim, they also testified that they did not notice anything wrong with the approaching truck, and it appears that if they considered the lights to be very dim they would have mentioned such.
In view of the very conflicting testimony as to the condition of the headlights at the time of the accident, we are unable to hold that the I.ower Court erred in this respect. Mr. Stevens made no mention of the fact that the lights were dim at the time of the accident, and both Barnes and Guillory testified that they were properly functioning, although they might have been somewhat dim. The driver of the truck and his helper both stated that the lights were properly functioning. Although the lights were very dim, according to the testimony of Stevens and Travis, at the time the truck was driven into the field, this could very easily have been caused by the drainage on the battery due to the lights burning with the motor idling for a period of some forty-five minutes
Another factor which appears is the fact that at the time the deceased was hit by the truck, there was approaching traffic which would to some extent tend to blind the driver of the truck. Although the driver did not mention such traffic, both Barnes and Guil-lory testified that they were passing the truck at the time it struck an object, and Stevens evidently must have appeared on the scene very shortly after the accident as is shown by his testimony.
Of course, we are unable to understand why the driver of the truck did not see the deceased sooner. It could have been that the deceased ran out in the front of the truck from the side of the highway. Or it could have been that the driver was blinded by the lights of the approaching vehicles, although he did not testify to this effect. On the other hand, we are unable to determine why the deceased was in the middle of the west lane of traffic on the highway in view of the approaching traffic. Even though we were to assume that the lights of the truck were somewhat dim, as some of the testimony indicates, certainly they were of such brightness as to be seen by the witnesses who testified. According to Barnes’ testimony, the lights were on bright before they were dimmed by the driver of the truck, and although he says the dimmers were somewhat dim, he did not mention the bright lights as being dim.
So we find a situation where the truck was proceeding in a southern direction in its proper lane of traffic and at a reasonable speed, and the driver thereof first noticed a man in the center of his lane at a distance of ten feet. At that time it certainly appears to us that the driver was powerless to do anything to avoid hitting the man. Certainly if the man ran out from the side of the highway into the path of the approaching traffic he was guilty of negligence, which negligence at least contributed to his death. Certainly at the time he was noticed by the driver, of the truck, the driver was unable to take any action to avoid hitting the deceased.
*842 Considering the record as a whole, we do not believe that the petitioner has proved his case with the legal certainty required. From the evidence submitted, we feel that the Lower Court was correct in holding for the defendants, and we certainly find no manifest error in said ruling.
For the reasons hereinabove, assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioners.
Judgment affirmed.